UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                          CASE NO. 8:15-CR-127-T-30AEP

JACQUELINE NUMATA

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by W. Stephen Muldrow, Acting United States Attorney for the Middle District of Florida, and Kenneth A. Blanco, Acting Assistant Attorney General of the Criminal Division of the United States Department of Justice, by and through the undersigned attorneys, respectfully submits this memorandum in support of a sentence of imprisonment for Jacqueline Numata, the defendant.

I.    **Applicable Sentencing Law**

The Sentencing Guidelines promulgated by the Sentencing Commission are advisory, although sentencing courts "must consult those Guidelines and take them into account when sentencing." United States v. Booker, 543 U.S. 220, 264 (2005); see also, Freeman v. United States, 564 U.S. 522, 530 (2011) (plurality opinion) (requiring a sentencing court to give due consideration to the relevant sentencing range). The Guidelines should serve as the starting point and the initial benchmark for determining an appropriate sentence, keeping in mind that a sentencing court may impose sentences within statutory limits based on appropriate consideration of all of the § 3553(a) factors. Pepper v. United States, 562 U.S. 476, 490 (2011). In "the ordinary case, the Commission's recommendation of a sentencing range will 'reflect a rough

1

approximation of sentences that might achieve § 3553(a)'s objectives.'" Kimbrough v. United States, 552 U.S. 85, 109 (2007) (quoting Rita v. United States, 551 U.S. 338, 350 (2007)); Gall v. United States, 552 U.S. 38, 46 (2007) (noting that the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions."). Pursuant to § 3553(a), a court should consider the nature and circumstances of the offense as well as the characteristics of the defendant. In addition, the court must consider other factors, including the need for the sentence "to reflect the seriousness of the offense, to promote respect for law, and to provide just punishment for the offense; [and] to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(A) & (B).

Accordingly, a sentencing court "must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors, 18 U.S.C. § 3553(a), explaining any variance from the former with reference to the latter." Nelson v. United States, 555 U.S. 350, 351 (2009).

## II. Background

On multiple, separate occasions over a two-month period between January 19 and March 16, 2015, the defendant issued two false bomb threats to a U.S. military base and downloaded and distributed numerous child pornography images. In order to carry out her criminal acts, the defendant first purchased and downloaded several applications that enabled her to anonymously browse the internet and create anonymous email addresses. On October 16, 2016, the defendant pleaded guilty to possession of child pornography and communicating a false bomb threat.

The defendant has admitted to creating an anonymous email account on the Tor darknet and then using that account to send a bomb threat on January 19, 2015, in her estranged husband's name, Takashi Numata, to the U.S. Air Force base in Misawa, Japan.  The threat stated, "I am Takashi Numata in Misawa City.  Tomorrow I will explode Misawa Air Base at 2200 Die Americans!"  The defendant sent a second false bomb threat nearly two months later on March 16, 2015, again via anonymous email to Misawa Air Base and again in her husband's name, stating that 20 bombs had been placed at several locations on base, including at "all 3 schools, BX, Burger king, post office, daycare and other place[sic]."  All buildings within the affected areas were evacuated, traffic was re-routed, and security was increased.  The defendant admitted that she made the bomb threats to falsely incriminate her husband.

Additionally, while the defendant was on the Misawa Air Base during this period, she accessed the internet on at least one occasion and downloaded approximately 80 child pornography images.  The defendant then accessed a website and created a blog under her estranged husband's name and uploaded the images.   She also created a Facebook profile for a fictional "Jessica Martin," and posted a link to the child pornography images on a Misawa Air Base Facebook community page, which were viewable by any member of that Facebook group.  Subsequently, approximately six weeks later, the defendant again accessed a child pornography website while she was on Misawa Air Base and downloaded additional child pornography images.  The defendant then created a flyer in her husband's name that contained several images of child pornography and advertised the sale of children for sex, child pornography, and marijuana.  Next, the defendant printed 50 copies of the flyer and distributed them

throughout Misawa City, Japan, and she posted a picture of the flyer (which contained child pornography) to the Misawa Air Base Facebook community page under a fake profile.

The pictures in the flyer distributed by the defendant in Misawa City and posted on Misawa Air Base's Facebook community page consisted of several images of sexual exploitation of a minor, including:

- one photograph of a nude prepubescent girl;

- one photograph of a prepubescent girl's vaginal area;

- one photograph of a prepubescent girl with an adult penis;

- one photograph of a prepubescent girl touching her vagina; and

- two photographs of an adult penis penetrating a prepubescent girl's mouth.

The additional photographs downloaded and possessed by the defendant consisted of the following and included images of vaginal penetration and bondage:

- three photographs of a prepubescent girl in bondage;

- one photograph of a prepubescent girl's vagina with sperm ejaculate on the stomach;

- thirty-six photographs of prepubescent girls' vagina;

- seventeen photographs of an adult penis penetrating a prepubescent girl's vagina;

- one photograph of a prepubescent girl's vagina with sperm ejaculate;

- six photographs of a prepubescent girl touching her vagina;

- six photographs of a nude prepubescent girl;

- thirteen photographs of a clothed prepubescent girl;

- two photographs of a prepubescent girl's belly;

4

- two photographs of an adult penis pointing towards a prepubescent girl's vagina;

- two photographs of a prepubescent girl's face;

- one photograph of a prepubescent child's buttocks;

- one photograph of a nude boy;

- one photograph of a prepubescent child holding an adult penis; and

- thirteen photographs of an adult penis penetrating a prepubescent girl's mouth.

### III. Considering the Sentencing Factors Under 18 U.S.C. § 3553(a), a Sentence of Imprisonment is Appropriate

In light of the nature and circumstances of the offenses in this case, the history and characteristics of the defendant, the need to afford adequate deterrence, and the need to avoid unwarranted sentencing disparities, a sentence of imprisonment is appropriate and necessary to comply with the purposes of 18 U.S.C. § 3553(a).

#### A. Nature and Characteristics of the Offenses

The defendant repeatedly engaged in very serious criminal conduct over the course of nearly two months. While the defendant apparently committed her crimes to inculpate her estranged husband with whom she was engaged in a long-running domestic abuse and child custody dispute, her actions went well beyond any single instance of lashing out or fleeting, emotionally-charged reactions born of frustration with a difficult situation. Rather, the defendant's actions were beyond the pale. She is a former Air Force service member who called in two bomb threats to an Air Force base on two separate occasions two months apart, and in between the defendant accessed and downloaded on multiple occasions over eighty images of child pornography, including images of vaginal penetration and bondage of prepubescent girls. The

5

primary considerations with respect to the nature and characteristics of the defendant's offenses are the child pornography victims and how she carried out her crimes.

First, it is clear the possession of child pornography was merely a means to an end because the defendant used those images to falsely implicate her husband, Takashi Numata, in the possession and sale of child pornography and child sex trafficking.   However, the real import of her actions is that she victimized the children involved.  While certainly Takashi Numata suffered the consequences of the defendant's attempts at retribution for their domestic dispute and to falsely incriminate him, even more so did the over eighty children whose images she downloaded and used in her ongoing scheme.  The defendant used the pictures of nude children and children engaged in sexual acts and made them publicly available on the Air Base's Facebook community page, and she distributed to the general public throughout Misawa City fifty copies of a flyer with several child pornography images. Consequently, to any extent the defendant may have been focused on harming her estranged husband, she knowingly and repeatedly took actions over an extended period that harmed innocent children in perhaps the most egregious way.

Second, in considering the nature and circumstances of the defendant's actions to determine an appropriate sentence, particular attention should be given to how the defendant carried out her crimes.  In this case, the defendant did not commit her crimes in the heat of the moment or while overcome by the stress of a domestic dispute.  She calculated her actions precisely to maximize her chances of incriminating her estranged husband and getting away with her crimes.

6

Before engaging in any of her criminal acts, the defendant downloaded the software needed to anonymously search and download child pornography and create fictitious online accounts from which she could perpetrate her scheme. Then, with the tools in place that would conceal her actions, the defendant issued a false bomb threat to a U.S. military base. When that first bomb threat did not have its desired effect, the defendant tried to implicate her husband in child pornography activities. However, the defendant did not merely conduct a simple internet search on one occasion and then post a few images in her husband's name. Instead, the defendant created multiple anonymous email accounts using the Tor darknet to conceal her online activities while she downloaded over eighty child pornography images on multiple occasions, and then she uploaded the images to a website and posted links to the images on the Misawa Air Base's Facebook community page. Several weeks later, the defendant downloaded additional child pornography images and created a flyer with child pornography images that advertised marijuana and the sale of children for sex, all in her husband's name. The defendant then distributed fifty copies of the flyer in Misawa and posted an image of the flyer on the Air Force base's Facebook community page. Yet none of these actions achieved the defendant's goals. Consequently, two months after her first bomb threat, the defendant issued a second, more serious bomb threat to the Misawa Air Base.

The defendant's punishment should fit the multiple crimes committed and reflect the seriousness of her nearly two-month long scheme to commit these acts on multiple occasions. Imprisonment in this case would appropriately factor in the defendant's extensive planning and extraordinary steps taken to commit these crimes, as well as the very high number of child pornography images she used.

### B.  History and Characteristics of the Defendant

The defendant is a 27-year old female born in Tampa, Florida, and she grew up in Springhill, Florida, with her parents and siblings.  After her parents separated when she was 19-years-old, the defendant and her siblings and mother returned to Tampa to live in her grandparent's home.  Shortly thereafter, the defendant enlisted in the Air Force in 2008, and she was stationed at Biloxi, Mississippi, before transferring to Misawa Air Base, Japan.  While in Japan, the defendant was discharged from the military (General Discharge) due to poor conduct.  The defendant continued to live in Japan and worked off base teaching English and on base at the Burger King.  During this period, she married a Japanese citizen, Takashi Numata, with whom she had a daughter, before separating from him in 2015.

The defendant has received multiple mental health evaluations and treatment, including before she committed these crimes, immediately after her arrest, and then on at least three occasions during her detention.  While not all of the evaluations are consistent, at least two indicate some level of malingering on the part of the defendant.

### C.  The Need for the Sentence to Reflect the Seriousness of the Offenses, to Promote Respect for the Law, and to Provide Just Punishment and Afford Adequate Deterrence

A sentence of imprisonment is necessary to reflect the seriousness of her crimes, promote respect for the law, and provide just punishment for her offenses.

In many respects, the defendant's situation domestic situation may have been similar to many others in this district and throughout the country.  While it is not clear to the government that her allegations against her ex-husband were substantiated, it may be assumed *arguendo* that she was physically abused.  However, even if true, nothing

excuses the multiple, serious criminal acts she did to falsely accuse her husband of threatening to explode a bomb at a U.S. military base and being involved with child pornography.  The defendant went to great lengths to falsely implicate her husband in bomb threats and to avoid detection on the internet while she sought out child pornography.  Even if the defendant was at one point similarly situated as others in domestic violence situations, her conduct is nonetheless inexcusable.  A sentence of imprisonment in this case would show other persons in similar circumstances that even in the worst situations the law does not condone or abide committing crimes in an attempt to falsely incriminate another person.

**IV.    Conclusion**

The government recommends a sentence of imprisonment.


Respectfully submitted,

W. STEPHEN MULDROW                    KENNETH A. BLANCO
Acting United States Attorney          Acting Assistant Attorney General

By:      /s/ *Rachel K. Jones*          By:      /s/ *Jay A. Bauer*
Rachel K. Jones                        Jay A. Bauer
Assistant United States Attorney       Trial Attorney
Florida Bar Number 091492              1301 New York Ave., NW
400 N. Tampa Street, Suite 3200        Washington, D.C.  20005
Tampa, Florida 33602                   Telephone:   202-353-0228
Telephone:   813-274-6000              Facsimile:    202-305-4624
Facsimile:    813-274-6178             E-mail: jay.bauer@usdoj.gov
E-mail: rachel.jones@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 21, 2017, I electronically filed the foregoing with the

Clerk of the Court by using the CM/ECF system, which will send a notice of electronic

filing to the following:

Jenny Devine, Esq.

By:    <u>/s/ *Jay A. Bauer*</u>
Jay A. Bauer
Trial Attorney
1301 New York Ave., NW
Washington, D.C.  20005
Telephone:   202-353-0228
Facsimile:     202-305-4624
E-mail: jay.bauer@usdoj.gov